UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAX PIERSON,

       Plaintiff,

       v.

FORD MOTOR COMPANY,

       Defendant.
_____/

No. C 06-6503 PJH

**FINAL PRETRIAL ORDER**

Pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, this final pretrial order is hereby entered and shall control the course of the trial unless modified by a subsequent order. The joint pretrial statement of the parties is incorporated herein except as modified by the court's ruling on the pretrial motions and objections.

**I.  PRETRIAL MOTIONS**

    **A.  Daubert Motions**

Federal Rule of Evidence 702 permits experts qualified by "knowledge, experience, skill, expertise, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See Fed. R. Evid. 702, Advisory Committee Notes. Although there is a presumption of admissibility, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993), the trial court is obliged to

act as a "gatekeeper" with regard to the admission of expert scientific testimony under Rule 702. Id. at 597.

Daubert requires a two-part analysis. First, the court must determine whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science" - in other words, whether the testimony is reliable and trustworthy. Id. at 590 & n.9, 593. Second, the court must determine whether the testimony is "relevant to the task at hand." Id. at 597.

Defendant Ford Motor Company ("Ford") seeks an order excluding the causation opinions of plaintiff's biomechanics expert Dr. Martha Bidez, and an order excluding the "warning" opinions of plaintiff's seat design expert Alan Cantor. It appears that expert reports were not provided for any of the designated expert witnesses, or at any rate, none were provided for plaintiff's experts.[1] Thus, Ford's challenges to plaintiff's experts are based in large part on snippets from the experts' depositions.

**1.     Defendant's Motion to Exclude Testimony of Dr. Bidez**

Ford seeks an order excluding plaintiff's expert Dr. Martha Bidez from testifying as to the cause of plaintiff's injuries. Dr. Bidez is a biomechanical engineer, with training and experience in the fields of injury causation and biomechanics, and has been so recognized by the courts in 32 state and Federal jurisdictions since 1990. She received a B.S. in Biology in 1979, a B.S. in Mechanical Engineering in 1985, an M.S. in Biomedical Engineering in 1983, and a Ph.D. in Biomedical Engineering in 1987.

Dr. Bidez is also an expert in the fields of injury prevention; occupant kinematics; restraint system design, testing, performance, and crashworthiness; human anatomical response to crash and restraint forces; and the performance, testing, and limitations of vehicular restraints in adults, children, and infants. Since 1990, she has been the owner and president of Bidez and Associates, Inc., a biomedical engineering professional service firm. She has held various academic appointments (primarily at the University of Alabama

---

[1] Plaintiff provided only a summary of each expert's proposed testimony. The absence of expert reports is odd and somewhat problematic, in view of the fact that proof in this product liability case will depend almost entirely on expert testimony.

2

at Birmingham) for over 20 years; has received numerous professional and academic honors; and has authored numerous articles and other published works.

In his expert witness disclosure, plaintiff stated that he planned on calling Dr. Bidez to testify regarding the movement of the occupants of the Ford E-350 van during the roll-over collision, and the mechanism of injury for the plaintiff; regarding the relationship between roof crush, the release of the bench seat, and injury. Plaintiff added, "The specifics of her opinions will be detailed at her deposition."

At her deposition, Dr. Bidez testified that plaintiff's neck fractured when the crown of his head was struck by the collapsing roof of the van. Although the van rolled 2 ½ times, Dr. Bidez testified that the injury-causing roof collapse occurred during the first 45 to 135 degrees of roll-over. Dr. Bidez identified three components of the van's design that she believed combined together to cause plaintiff's injury – the roof, the seat belts, and the bench seat – and asserted that these three independent mechanical systems were interrelated in their effect on plaintiff and his injury.

Dr. Bidez stated that in her opinion, during the point of the crash when plaintiff was injured, he was upside-down falling toward the roof, and the roof was collapsing and intruding toward plaintiff. The resulting impact between the collapsing roof and plaintiff's falling body was sufficient to fracture his neck. In Dr. Bidez's opinion, absent the force generated by the collapsing roof, plaintiff would not have received the neck injury simply from falling head-first into the roof.

Dr. Bidez also stated that plaintiff's seat belt was inadequate because it didn't keep him from violently contacting the roof. In addition, she testified that the unlatched bench seat could have contributed to the force of the impact if the seat were in contact with plaintiff, thereby adding to his falling velocity. Dr. Bidez concluded that if the roof had not deformed, the seat latch had not disengaged, and the seat belt had properly coupled plaintiff's body to the seat, plaintiff would not have been severely injured.

Ford argues that Dr. Bidez's theory that the interplay between the van's roof, seat belt, and seat latch caused the injury cannot be admitted because it is based on "unknown"

1  and "unknowable" facts, and is therefore entirely "speculative."  Ford asserts that Dr. Bidez
2  does not know – and that it is not knowable – when plaintiff's head was in contact with the
3  roof; the extent to which the seat belt was restraining plaintiff when his head was in the
4  vicinity of the roof; or what interaction, if any, there was between plaintiff and the bench
5  seat when his head was in the vicinity of the roof.

6  Ford asserts that Dr. Bidez is speculating that because plaintiff was injured during
7  the course of the accident, these three vehicle components must have caused the injury.
8  Ford contends, however, that this speculation is not sufficient under Federal Rule of
9  Evidence 702 and Daubert, because the factual contentions that underlie Dr. Bidez's
10 opinions are not supported by physical evidence, percipient witness testimony, or any
11 reliable scientific or technological methodology or analysis.

12 Ford makes two main arguments – plaintiff cannot meet his burden of showing that
13 the van's defective design was a substantial factor in causing the injury, and that plaintiff
14 cannot meet his burden of showing that Dr. Bidez's causation opinions are based on a
15 scientific and reliable foundation.

16 The motion is DENIED.  First, the ultimate issue of causation is not appropriate for
17 determination in a motion to exclude evidence.  Second, because plaintiff provided no
18 expert report, the court is unable to ascertain the exact substance of Dr. Bidez's opinions
19 regarding causation, based solely on the snippets of deposition testimony cited by Ford.
20 Moreover, Dr. Bidez testified that she relied in part on other experts, for whom the court
21 also has seen no reports.  The court lacks sufficient information regarding the proposed
22 opinion testimony to determine whether it is reliable and trustworthy, or whether it should
23 be excluded.   Third, to the extent that the court understands Ford's arguments, they
24 appear to challenge the weight, more so than the reliability of this evidence, and a vigorous
25 cross-examination and rebuttal expert testimony are the appropriate answers.

**2.    Defendant's Motion to Exclude Testimony of Alan Cantor**

27 Ford seeks an order excluding the "warning" opinions of plaintiff's expert Alan
28 Cantor.  Mr. Cantor is an engineer, with training and experience in the areas of motor

4

1  vehicle seat design and performance, occupant restraint, and occupant kinetics as it relates
2  to occupant crash protection in all types of vehicle accidents.  He received a B.S. in
3  Aerospace Engineering in 1972, and has published numerous peer-reviewed articles and
4  treatises in his area of expertise.  He also holds several patents for seating and restraint
5  designs and is a nationally-recognized expert in the field.

6  In his expert witness disclosure, plaintiff stated that he planned on calling Mr. Cantor
7  to testify regarding the performance of the second-row bench seat (where plaintiff was
8  sitting) and its latching mechanism, and the inability of those systems to prevent injurious
9  impact between the occupant and the vehicle's interior during roll-over collisions.  Plaintiff
10 also stated that Mr. Cantor will testify regarding how the system could have been improved
11 to prevent the propelling of plaintiff into the roof during the accident.  Plaintiff added, "The
12 specifics of those opinions will be detailed at his deposition."

13 At his deposition, Mr. Cantor testified that when engineers cannot design a particular
14 hazard out of a product, they determine that the product requires a warning.  He asserted
15 that because Ford could not design out the risks posed by the unlatched bench seats, a
16 warning was necessary.  While Ford did place a warning in the owner's manual regarding
17 the hazards of traveling with the bench seats unlatched, Mr. Cantor was of the opinion that
18 that type of warning was not adequate, based on his experience in seat design.  He
19 suggested alternative warnings – a sticker on the bench seat depicting a figure being
20 launched by an unlatched seat; the placement of the words "latched" and "unlatched" at
21 each side of the lever that attaches the seat to the floor; and the installation of a red light on
22 the dash to indicate that the seat is properly latched.

23 Ford now seeks an order excluding the Mr. Cantor's "warning" opinions.  Ford
24 asserts that these "warning" opinions do not meet the reliability standard under Rule 702
25 and Daubert because plaintiff has failed to address Mr. Cantor's lack of qualifications in the
26 science of "warnings design," known more formally as the study of "human factors."

27 According to Ford, human factors experts specialize in the study of the ways in
28 which the human mind receives and interprets information, and are used in product liability

1 actions to testify that products should be designed to provide the human operator with as
2 much safety as is technologically possible.  Thus, Ford contends, human factors experts
3 may testify not only that a product was defective for lack of needed warnings or
4 instructions, but also that the warnings that were provided with a product were inadequate
5 for not using the correct words, symbols, or colors, or because they were not placed on the
6 product at a location where they could provide effective notice to the user.

7 In addition, Ford asserts, when an analysis confirms that a product hazard poses an
8 unreasonable risk of harm to the user, the human factors expert can propose ameliorative
9 or prophylactic safety measures to eliminate the hazard in the design stages or to provide
10 adequate safeguarding to avoid or reduce the risk related to the hazard.  Ford contends
11 that human factors experts are commonly used in product liability cases to testify that a
12 warning is inadequate, that persons who encounter hazards that cannot be "designed out"
13 do not have sufficient "hazard awareness," and that chances of averting danger would be
14 increased through the institution of an alternative proposed of "candidate" warning.

15 Ford seems to accept that Mr. Cantor is qualified to offer opinions about seat design,
16 but claims that he is not qualified to offer opinions about the ways a warning should be
17 designed, or about whether the E-350's warnings were adequate or inadequate.  Ford
18 argues that in order for plaintiff to explore the adequacy of the E-350's warning, and
19 whether a warning would help passengers avoid similar hazards in the future, he would
20 need to retain and disclose a human factors expert.

21 Ford asserts that even though Mr. Cantor has stated that he limited the scope of his
22 opinion to testifying to the need for a warning – as opposed to the adequacy of the warning
23 that Ford did provide in the operator's manual – it is clear (according to Ford) that Mr.
24 Cantor will be offering an opinion about how the E-350's warning should have been
25 designed.  Ford argues that there is no evidence that Mr. Cantor is qualified by experience,
26 education, or training to offer human factors opinions.

27 There appears to be no dispute that Mr. Cantor is not a human factors expert, and
28 also no dispute that he is qualified by experience, education, and training to offer

engineering opinions regarding the need for warnings.  Thus, Ford's motion is DENIED to the extent that plaintiff intends to offer Mr. Cantor to testify that the design of the bench seat was such that a warning was needed.  The motion is GRANTED to the extent that plaintiff seeks to offer Mr. Cantor to testify regarding the adequacy of Ford's warnings.

**B.     Plaintiff's Motions in Limine**

1.     Plaintiff's Motion in Limine No. 4, to exclude personal experiences, beliefs, or assertions of personal knowledge by attorneys; and Motion in Limine No. 9, to exclude evidence of prior settlement, were conditionally GRANTED on July 3, 2008, pursuant to agreement by Ford.  Plaintiff's Motion in Limine No. 2, to preclude evidence of collateral sources payments, and Motion in Limine No. 8, to exclude evidence of plaintiff's past marijuana use, were GRANTED as unopposed on July 3, 2008.

2.     Plaintiff's Motion in Limine No. 1, to exclude evidence of industry custom or practice, is GRANTED in part and DENIED in part.  The motion is DENIED as to evidence that Ford met or exceeded Federal Motor Vehicle Safety Standards ("FMVSS").  The motion is DENIED as to evidence of industry custom, if the court determines that liability is to be determined under the risk-benefit test, but GRANTED to the extent that the consumer expectation test may apply.

3.     Plaintiff's Motion in Limine No. 3, to preclude evidence or argument regarding the Malibu and CRIS (Controlled Roll-Over Impact System) testing, is DENIED.

4.     Plaintiff's Motion in Limine No. 5, to exclude evidence from or reference to <u>Wiley v. General Motors</u>, is GRANTED, except that Ford may of course use Cantor's prior recorded testimony for impeachment purposes should his testimony in this rial be different than his previous testimony.  The transcript will not be admitted as evidence nor will prior judicial findings or rulings be admitted.

5.     Plaintiff's Motion in Limine No. 6, to exclude evidence of driver negligence and the complaint as evidence, is DEFERRED pending further briefing (see below).

6.     Plaintiff's Motion in Limine No. 7, to exclude evidence that Ford expert

7

Dennis H. Schafer owned a Ford E-350, is DENIED.

7. Plaintiff's Motion in Limine No. 10, to exclude testimony from Ford's witness Joseph Long regarding the cost of annuities in the amount of plaintiff's damages, is DENIED.

**C.    Ford's Motions in Limine**

1. Ford's Motion in Limine No. 1, to exclude evidence of "drop testing" that is not substantially similar to the subject crash, including related testimony of Stephen Forest, is DENIED. The parties may proffer limiting instructions.

2. Ford's Motion in Limine No. 2, to exclude evidence of the "spit test" conducted by plaintiff's expert Alan Cantor, is DENIED. The parties may proffer limiting instructions.

3. Ford's Motion in Limine No. 3, to exclude evidence of or references to an alleged bench seat defect claim, is DEFERRED, pending further briefing. Even with further briefing, however, a ruling on this motion will likely not dispose of any substantive claim. This motion appears to constitute another attempt to obtain a ruling on the issue of causation, an issue that should have been raised in a motion for summary judgment. Nevertheless, further briefing will assist the court in understanding the parties' positions, and such understanding will be of assistance at the trial in the event of a Rule 50 motion on ths issue (see below).

4. Ford's Motion in Limine No. 4, to exclude evidence of other accidents that are not substantially similar to the subject crash, is GRANTED except as to the accident giving rise to the Cox v. Ford Motor Company case.

5. Ford's Motion in Limine No. 5, to exclude evidence of or references to the proposed changes to FMVSS No. 216, is GRANTED.

6. Ford's Motion in Limine No. 6, to exclude evidence of seat-integrated restraints, is DENIED without prejudice to raising it at trial.

7. Ford's Motion in Limine No. 7, to exclude expert opinion testimony from plaintiff's treating physician Dr. Jeffrey Weider, is GRANTED as to testimony

regarding causation or liability, but DENIED as to testimony regarding Dr. Weider's treatment of plaintiff.

8. Ford's Motion in Limine No. 8, to exclude evidence concerning Volvo Corporation and concerning any Volvo vehicle, is DEFERRED pending further briefing (see below).

### D. Further Pretrial Briefing

As the court indicated at the pretrial conference, additional briefing is required so that essential questions can be answered before commencement of trial. It is impossible to determine the scope of the relevant evidence and the applicable jury instructions without knowing what legal standards apply to this product liability action, yet neither party directly briefed the issue nor requested the court to decide it. To that end the court orders further briefing on whether the risk-benefits test or the consumer expectations test applies to determining strict liability in this case. Along with this issue the parties must also address the burdens with respect to production and proof on the feasibility of alternative design issue. Additionally, the court requires further briefing on the availability of comparative fault in this case where the allegedly negligent joint tortfeasor is no longer a party. And third, the parties shall provide further briefing on the issue raised by Ford's motion in limine number 3 above regarding the bench seat defect claim. Ford's supplemental motion in limine is due two weeks from the date of the pretrial conference. All issues shall be addressed in one brief not exceeding 25 pages. The opposition is due two weeks thereafter; the reply one week thereafter. It is the court's intention to decide the motion on the papers and issue a written ruling. If, however, a hearing is necessary, counsel will be contacted.

## II. **WITNESSES**

The parties should work together to avoid calling witnesses twice where possible. For witnesses appearing by deposition only, the parties are directed to the July 24, 2008 Trial Rules and Procedures.

**III.     EXHIBITS**

As there are voluminous exhibits and given the time limitations that will be imposed, the parties are required to meet and confer and attempt to arrive at a stipulation regarding the authenticity and admissibility of documentary exhibits.  The parties will be required during trial to bring objections to particular documents or categories of documents to the court's attention either before the start of the trial day or after conclusion of the trial day.

**IV.     VOIR DIRE**

As described at the pretrial conference, the court will conduct the voir dire of the panel and each party will be permitted 30 minutes followup voir dire of the entire panel. Eight jurors will be seated.  The questionnaire submitted by the parties will be used, but needs some revision.  First, it must be shortened to no more than 45 questions.  Second, the court disapproves or finds unnecessary in view of the oral questions that will be put to the panel,  the following questions which should be eliminated: 14, 15, 16, 17, 18, 23, 24, 25, 28, 29, 30, 32, 33, 34, 35, 36, 37, 41, 42, 59, 60, 61-71.  A revised questionnaire must be submitted no later than three weeks before trial.

**V.     JURY INSTRUCTIONS**

The court approves the joint instructions with the exception of nos. 10 and 35.  Any of these instructions that need revision in view of the court's ruling on the motions in limine must be submitted no later than three weeks before trial.  The parties need not re-submit those joint instructions that do not need revision.

The separately proposed instructions will need revision following the court's ruling on the motions in limine.  The parties shall meet and confer and attempt to jointly agree on instructions and to reduce the number of separately prosed instructions in contention to no more than ten.  Revised jury instructions must be submitted no later than three weeks before trial.  The parties shall submit a joint instruction describing each party's claims and defenses.  The court will not approve argumentative instructions based on case law, such as those proposed by Ford.

## VI. VERDICT FORM

The parties shall meet and confer and prepare a joint verdict form in view of the court's ruling on the motions in limine and submit it no later than three weeks before trial.

## VII. TRIAL SCHEDULE AND TIME LIMITS

The trial is scheduled for two weeks. The trial week is Monday, Tuesday, Thursday Friday, from 8:30 - 1:30 with two fifteen minute breaks each day. Jury selection and opening statements will occur on the first day. Each side will be permitted 13 ½ for direct and cross examination of witnesses. Closing arguments will occur on the last day of trial but will not be counted against the 13 ½ hours.

**IT IS SO ORDERED.**

Dated: August 1, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge