UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAX PIERSON,

        Plaintiff,

        v.

FORD MOTOR COMPANY,

        Defendant.

_____/

No. C 06-6503 PJH

**SUPPLEMENTAL FINAL PRETRIAL ORDER**

This order supplements the Final Pretrial Order filed in this action on August 1, 2008.

**A.    Motions in Limine**

    1.    Plaintiff's Motion in Limine No. 6

Plaintiff's Motion in Limine No. 6, to exclude evidence of driver negligence and to exclude the complaint as evidence, is DENIED as to evidence of driver negligence, and GRANTED as to the complaint.

Comparative fault principles apply in strict product liability actions. Daly v. General Motors Corp., 20 Cal. 3d 725, 736-37, 742 (1978). Moreover, the comparative fault of negligent tortfeasors may be weighed against strictly liable parties. Safeway Stores, Inc. v. Nest-Kart, 21 Cal. 3d 322, 325, 332 (1978).

> [T]he "comparative fault" doctrine is a flexible, commonsense concept, under which a jury properly may consider and evaluate the relative responsibility of various parties for an injury (whether their responsibility for the injury rests on negligence, strict liability, or other theories of responsibility), in order to arrive at an "equitable apportionment or allocation of loss."

Knight v. Jewett, 3 Cal. 4th 296, 313-14 (1992) (citations omitted); see also Bostick v. Flex Equip. Co., Inc., 147 Cal. App. 4th 80, 101-03 (2007).

In 1986, California voters passed Proposition 51, a measure designed to modify the joint and several liability doctrine in tort cases. See DaFonte v. Up-Right, Inc., 2 Cal. 4th 593, 596 (1992). Proposition 51 added § 1431.2 to the Civil Code, which provides that no defendant shall have joint liability for non-economic damages, and that each defendant shall be liable only for those non-economic damages directly attributable to his or her own percentage of the fault. Cal. Civ. Code § 1431.2.

The express purpose of Proposition 51 was to eliminate the perceived unfairness of imposing all the damages on defendants who were found to share only a fraction of the fault. DaFonte, 2 Cal. 4th at 603 (quoting Civil Code § 1431.2(b)). In DaFonte, the California Supreme Court held that the only reasonable construction of § 1431.2(b) is that a defendant's liability for non-economic damages cannot exceed his or her proportionate share of fault as compared with all fault responsible for the plaintiff's injuries, not merely that of the defendants present in the lawsuit. Id. The court noted that § 1431.2 "plainly limits a defendant's share of noneconomic damages to his or her own proportionate share of comparative fault." Id. at 604.

In Roslan v. Permea, Inc., 17 Cal. App. 4th 110 (1993), the California Court of Appeal cited DaFonte for the proposition that damages must be apportioned among the "universe of tortfeasors," including "nonjoined" defendants. Id. at 113. The trial court in that case had not allowed the jury to assess the comparative fault of the two defendants that settled before trial, and had also refused to allow the remaining defendant to present culpability evidence of one settling defendant. Id. at 112. Because the remaining defendant could be liable only for its own share of the non-economic damages, the Court of Appeal remanded the case to the trial court so that the jury could assess the settling defendants' comparative fault. Id.; see also Kitzig v. Nordquist, 81 Cal. App. 4th 1384, 1399 (2000).

In Arena v. Owens Corning Fiberglas Corp., 63 Cal. App. 4th 1178 (1998), the Court of Appeal cited DaFonte and Safeway, holding that § 1431.2 applies equally to strict product liability actions. Id. at 1197. The court ruled that because multiple products

2

caused the plaintiff's injuries, and because the evidence provided a basis to allocate liability for non-economic damages between defective products, § 1431.2 required the trial court to make an allocation of non-economic damages between defendants. Id. at 1199.

Here, because Patrick Scott (and any other unnamed tortfeasors) fall within the "universe of tortfeasors" in this case, the jury may consider the negligent actions of Mr. Scott and any other tortfeasors, even though they are not part of this litigation. Such evidence is relevant because Ford can be liable only for its own share of the plaintiff's non-economic damages.

However, the allegation in the original complaint regarding Mr. Scott's negligence is not admissible as a "judicial admission." The Ninth Circuit defines "judicial admissions" as "formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988). Factual assertions in pleadings and pretrial orders are considered judicial admissions, and are conclusively binding on the parties who made them. Id.; see also Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1203 (E.D. Cal. 2008).

Here, plaintiff alleged in the original complaint that Patrick Scott's negligence caused the accident. "Negligence" is a legal conclusion or opinion, see e.g., Bird v. Saenz, 28 Cal. 4th 910, 920 (2002), not a statement of fact or a formal admission that has the effect of withdrawing a fact from issue and dispensing with the need for proof for that fact.

2.      Ford's Motion in Limine No. 3

Ford's Motion in Limine No. 3, to exclude evidence of or references to an alleged bench seat defect claim, is DENIED. Ford argues that this evidence should be excluded as irrelevant because plaintiff cannot prove that the bench seat's alleged defect was a substantial factor in causing his injuries. Ford supports this argument with brief excerpt from the deposition testimony of plaintiff's biomechanical expert, Dr. Martha Bidez, in which Ford claims Dr. Bidez conceded that plaintiff would have sustained the same injuries even if the bench seat had remained attached to the floor.

While Ford's statement of the law governing causation in California is generally correct – that it is the plaintiff's burden to show that the alleged defect was a substantial factor in causing the plaintiff's injuries – the court is not persuaded that plaintiff has not and cannot establish causation with regard to the bench seat defect.

A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect (manufacturing or design) that causes injury to a human being. Barker v. Lull Engineering Co., 20 Cal. 3d 413, 427 (1978) (quoting Cronin v. J.B.E. Olson Corp., 8 Cal. 3d 121, 130 (1972)). A plaintiff in a strict liability product defect case satisfies his burden when he proves the existence of a "defect" and that such defect was a legal cause of his injuries. Id. (citing Cronin, 8 Cal. 3d at 133-34); see also Soule v. General Motors Corp., 8 Cal. 4th 548, 572 (1994). A tort is a legal cause of injury only when it is a substantial factor in producing the injury. Mitchell v. Gonzalez, 54 Cal. 3d 1041, 1048-54 (1991).

Generally, an accident or collision is considered a foreseeable risk against which a motor vehicle manufacturer is required to take precautions. Cronin, 8 Cal. 3d at 126. The crashworthiness or enhanced injury doctrine is well-established in California (as in most jurisdictions). In Cronin, the California Supreme Court imposed strict liability on a vehicle manufacturer for enhanced injuries occurring in the crash of an automobile where the accident was not caused by the defect itself but where the defectiveness was a substantial factor contributing to his injuries. See id.

> Although a collision may not be the 'normal' or intended use of a motor vehicle, vehicle manufacturers must take accidents into consideration as reasonably foreseeable occurrences involving their products. The design and manufacture of products should not be carried out in an industrial vacuum but with recognition of the realities of their everyday use.

Id. (citations omitted).

The Cronin court cited Larsen v. General Motors Corp., 391 F.2d 495, 501-03 (8th Cir. 1968), which is generally given credit for introducing the crashworthiness or enhanced injury or "second collision" doctrine. The Larsen court held that an automobile manufacturer is "under a duty to use reasonable care in the design of its vehicle to avoid subjecting the

4

user to an unreasonable risk of injury in the event of a collision." Id. at 502.

Six years after Cronin, in Daly, the California Supreme Court considered a case in which the sole theory of the complaint was strict liability for damages caused by an allegedly defective vehicle door latch, which the plaintiffs asserted had been activated by the impact between the motor vehicle and a metal divider fence on the freeway. The plaintiffs (widow and children of the decedent driver of the vehicle) alleged that but for the faulty latch, the decedent would have been restrained in the vehicle and would have received only minor injuries. "Thus," the court explained, "the case involves a so-called 'second collision' in which the 'defect' did not contribute to the original impact, but only to the 'enhancement' of injury." Daly, 20 Cal. 3d at 730-31.

Twenty-two years later, in Soule, the California Supreme Court held that "[b]ecause traffic accidents are foreseeable, vehicle manufacturers must consider collision safety when they design and build their products. Thus, whatever the cause of an accident, a vehicle's producer is liable for specific collision injuries that would not have occurred but for a manufacturing or design defect in the vehicle." Id., 8 Cal. 4th at 560 (citing Cronin, 8 Cal. 3d at 126).

The court held that the plaintiff has the burden of proving that the defect in question was a substantial factor in causing the enhanced injuries. "If the external force of a vehicle accident was so severe that it would have caused identical injuries notwithstanding an abstract "defect" in the vehicle's collision safety, the defect cannot be considered a substantial factor in bringing them about." Id. at 572. Thus, the plaintiff bears the burden of proving a causal connection between the defect and his enhanced injuries.

> Although a defect need not be the legal cause of a motor vehicle accident in order to allow plaintiff to recover for injuries resulting from that defect, and although motor vehicle accidents are foreseeable hazards whose possibility an automobile manufacturer must keep in mind when designing vehicles, it is a necessary prerequisite to recovery for defective design that the defect be a substantial contributing factor to plaintiff's injuries. If the violence of the crash is the effective efficient cause of plaintiff's injuries to the extent that it supercedes other factors such as defective design and makes them immaterial, plaintiff cannot recover.

Doupnik v. General Motors Corp., 225 Cal. App. 3d 849, 926 (1990).

Ford contends that plaintiff bears the burden of showing both "substantial factor" causation and "but for" causation. The California Supreme Court has held on more than one occasion that the "substantial factor" test subsumes the "but for" test. See Mitchell, 54 Cal. 3d at 1052; see also Viner v. Sweet, 30 Cal. 4th 1232, 1239 (2003). It is not necessary, however, that the jury be instructed on both "substantial factor" and "but for" causation. Mayes v. Bryan, 139 Cal. App. 4th 1075, 1095 (2006).

The California Judicial Council recognized that the "but for" test is included in the "substantial factor" test when it issued revised CACI No. 430. See id. The current version of this instruction reads as follows:

> A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.
>
> [Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.]

CACI No. 430 (2007 ed.). The committee notes explain that "this definition of 'substantial factor' subsumes the 'but for' test of causation – e.g., plaintiff must prove that but for the defendant's conduct, the same harm would not have occurred." Id., Directions for Use (citing Viner, 30 Cal. 4th at 1239-40). The notes add that under Viner, the bracketed language may be used in addition to the substantial factor instruction except in cases of concurrent independent causes. Id.

The court finds further that Ford's motion to strike the supplemental declaration of Dr. Martha Bidez must be GRANTED. In the supplemental declaration, filed with plaintiff's opposition to Ford's supplemental brief, Dr. Bidez purports to summarize her deposition testimony and the testimony in her prior declaration, regarding the cause(s) of plaintiff's injuries. It is not the role of an expert to summarize her own prior testimony. Counsel for either Ford or plaintiff could have provided the court with a copy of the transcript of Dr. Bidez's deposition, and could have summarized the testimony as part of the argument regarding causation. However, neither did so.

Counsel for Ford provided only a brief excerpt of the deposition testimony, and now

1  argues that testimony regarding the alleged bench seat defects should be excluded, and
2  seeks what amounts to a dispositive ruling on the question whether plaintiff has established
3  that the allegedly defective bench seat caused plaintiff's injuries.  The court cannot make
4  such a ruling based entirely on a snippet of testimony which is not trustworthy, and which is
5  far too short and may be taken out of context.  The court will permit Dr. Bidez to testify at
6  trial, but her testimony will be limited to providing the opinions she testified to in her
7  deposition.

8     3. Ford's Motion in Limine No. 8

9    Ford's Motion in Limine No. 8, to exclude evidence concerning Volvo Corporation
10 and concerning any Volvo vehicle, is DENIED.  The evidence may be relevant to the
11 question of feasible alternative design, whether as part of plaintiff's showing on causation,
12 or as part of Ford's burden under the risk-benefit test.

13   California courts employ two alternative tests in ascertaining whether a product is
14 defective – the "consumer-expectations" test and the "risk-benefit" test.  Barker, 20 Cal. 3d
15 at 429-31.  Under the consumer-expectations test, a product may be found defective if the
16 plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer
17 would expect when it was used in an intended or reasonably forseeable manner.  Id. at
18 429, 432.  The consumer-expectations test is reserved for cases in which the everyday
19 experience of the product's users permits a conclusion that the product's design violated
20 minimum safety assumptions and is thus defective.  Soule, 8 Cal. 4th at 567.

21   Alternatively, a product may be found defective in design, even if it satisfies ordinary
22 consumer expectations, if the jury determines that the risk of danger inherent in the
23 challenged design outweighs the benefits of such design.  Barker, 20 Cal. 3d at 430, 432.
24 Under this second standard, once the plaintiff has made a prima facie showing that the
25 injury was proximately caused by the product's design, the burden shifts to the defendant to
26 prove, in light of the relevant factors, that the product is not defective.  Id. at 431-32.
27 The relevant factors include "the gravity of the danger posed by the challenged design, the
28 likelihood that such danger would occur, the mechanical feasibility of a safer alternative

design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from the alternative design." Id. at 431.

In the present case, where the issue of design defect calls for a careful assessment of feasibility, practicality, risk, and benefit, the question whether the vehicle's "occupant protection systems" or "safety systems" were defective cannot be resolved simply on the basis of ordinary consumer expectations because the characteristics and performance of the "occupant protection systems" or "safety systems" are in large part beyond the understanding or common experience of the consumers who normally use the product. Thus, the risk-benefit test is the appropriate test. Under this test, plaintiff must prove that the design of the relevant parts of the vehicle was a substantial factor in causing his injuries, and Ford must prove that the benefits of the design outweigh its inherent risk of danger.

In Soule, the plaintiff was injured in an automobile collision, and the court held that the consumer-expectations test was inapplicable, because the performance of the vehicle's wheel assembly during the circumstances of the collision at issue was not within the everyday experience of the consuming public; because both parties had assumed that complicated design considerations were at issue and that expert testimony was necessary; and because an ordinary consumer of automobiles cannot reasonably expect a car's frame, suspension or interior will be designed to remain intact in any and all accidents. Id., 8 Cal. 4th at 570. The court noted examples of expectations that are permitted by the everyday experiences of a product's users, such as the expectation that an automobile not explode while idling at a stoplight, or roll over and catch fire in a two-mile-per-hour collision. Id. at 566-67.

Here, although plaintiff argues that the appropriate test is the consumer-expectations test, he has as much as conceded that the "risk benefit" test is the appropriate test because he has designated numerous experts to testify on the various aspects of the vehicle's "occupant protection systems" or "safety systems," and because his theory of the case appears to be that the cause of his injuries was the interaction of several elements of

8

those "safety systems."

In short, the facts of this case do not lend themselves to application of the consumer-expectations test. For example, an ordinary consumer cannot be expected to understand, without the assistance of experts, how to interpret crash tests or analyses of vehicle roof strength and structure. Moreover, such evidence can be presented only through expert testimony. Nor would an ordinary consumer have the expertise to apply biomechanical analysis to ascertain exactly how a vehicle occupant was injured in a rollover accident, particularly in a case asserting that roof weakness, seat latch instability, and possibly seat belt design all contributed to the product defect.

### B. Trial Schedule

If the court's schedule permits, the trial of this action will begin on Monday, December 1, 2008. The court will advise the parties by the end of October whether the December 1 date is available.

**IT IS SO ORDERED.**

Dated: October 3, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge