UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAX PIERSON,

    Plaintiff,

    v.

FORD MOTOR COMPANY,

    Defendant.
_____/

No. C 06-6503 PJH

**THIRD SUPPLEMENTAL FINAL PRETRIAL ORDER**

    Before the court is plaintiff's motion to exclude certain testing and opinions of defendant's human factors expert, Christine Wood, Ph.D. Having read the parties' papers and carefully considered their arguments, and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**BACKGROUND**

    This is a product liability case. Plaintiff Dax Pierson was a passenger in a Ford E350 passenger van that was traveling on an icy road in Iowa, skidded off the road, and rolled over and down an embankment. Plaintiff was rendered a quadriplegic as a result of his injuries.

    Plaintiff now seeks an order excluding certain tests conducted by defendant Ford Motor Company's human factors expert Christine Wood, Ph.D., and the corresponding opinions she intends to offer based on that testing. Dr. Wood is a Principal Scientist with Exponent Failure Analysis Associates ("Exponent") and the Director of Exponent's human factors practice. She has a Ph.D. in experimental psychology.

    At trial, plaintiff intends to present the testimony of his "seat design" or "seat latch"

1   expert, Alan Cantor.  Mr. Cantor, an engineer and expert in automotive and aircraft seat
2   design, will testify in support of plaintiff's claim that because of defects that were inherent in
3   the design of the "quick release" latches on the E350's removable seats, some type of
4   visible warning was required to alert passengers in the van when the latch was unlatched
5   (and therefore not secure).

6         Mr. Cantor, who did not provide an expert report, was deposed on December 12,
7   2007.  He offered opinions about the bench seat latch design, and about a passenger's
8   ability to perceive, under normal driving conditions, whether the seat is unlatched from the
9   floor.  Mr. Cantor stated that it was "more probable than not that an occupant would not
10  perceive the unlatching state on one side versus another."

11        In response to plaintiff's evidence concerning the need for a warning, Ford retained
12  Dr. Wood, to rebut Mr. Cantor's engineering and design opinions that the E350 bench seat
13  equipped with a quick-release latching system requires an in-vehicle warning.

14        On February 22, 2008, Dr. Wood conducted an "expert review" of an exemplar van.
15  In this review, Dr. Wood and another person sat in the positions occupied by plaintiff and
16  one of the other passengers at the time of the crash.  Dr. Wood testified in her deposition
17  that the primary purpose of the experiment was for her to "get a feel for whether the seat
18  would move" as the vehicle was "making a circuit of that area and coming to stops and
19  starting again."

20        Dr. Wood, who did not provide an expert report, was deposed for the first time on
21  March 31, 2008.  She testified that during the February 22, 2008 expert review, the
22  unlatched edge of the seat pivoted around the latched end of the seat, and that the seat
23  shifted, depending on whether the vehicle was accelerating or decelerating.  She
24  concluded that in the traveling that was done in the nearing 2800 miles that plaintiff's band
25  had traveled, "there would be feedback information that the seat wasn't secure."

26        On or about May 15, 2008, Mr. Cantor conducted "rebuttal testing" with the seat
27  unlatched.  He concluded that a person seated in plaintiff's position could not feel the seat
28  move under him, in normal driving conditions.

On June 10, 2008, the parties filed their pretrial papers. In its proposed witness list, Ford listed Dr. Wood on its witness list as one of its proposed trial witnesses, stating that

> Dr. Wood is a Human Factors expert and will testify in rebuttal to Mr. Cantor's warning opinions and warning designs, if they are allowed at trial. She will testify regarding the adequacy of the warnings Ford provided concerning the bench seat, the need to prioritize warnings so as to avoid "information overload," and the inadequate methodology employed by [p]laintiff's expert Alan Cantor in devising his alternative warning stickers and lighting system.

On July 23, 2008, Dr. Wood conducted what Ford characterizes as "rebuttal work" to graphically demonstrate her prior expert review, and to illustrate the opinions she had previously testified to.

The following day, July 24, 2008, which was also the day of the final pretrial conference in this case, Ford served plaintiff with the results of the previous day's "demonstration" (which plaintiff refers to as a "test") performed by Dr. Wood. Plaintiff objected to the testing/demonstration on the ground that it was not disclosed until more than 60 days after the close of discovery, and only a month before the date that the trial was originally scheduled to begin. At the pretrial conference, the trial date was continued, as the court determined that the parties were not ready for trial.

On August 1, 2008, the court issued its Final Pretrial Order. In that order, the court granted Ford's motion in limine to exclude the "warning" opinions of Alan Cantor to the extent that plaintiff seeks to offer Mr. Cantor to testify regarding the adequacy of Ford's warnings. The court denied the motion to the extent that plaintiff intends to offer Mr. Cantor to testify that the design of the bench seat was such that a warning was needed.  On October 15, 2008, plaintiff filed a motion to exclude the July 23, 2008 Wood testing/demonstration as untimely. On November 19, 2008, the court denied plaintiff's motion, largely on the ground that the trial date had been continued to May 11, 2009, such that sufficient time remained to complete discovery as to the testing issue without prejudice to either party. As part of the order denying plaintiff's motion, the court ordered that Dr. Wood be made available for deposition at Ford's expense.

On December 11, 2008, while preparing for her deposition, Dr. Wood learned that

one scenario she had experienced in her February expert review had not been included in the July demonstration, but was included in Mr. Cantor's May 18, 2008 evaluation. She therefore conducted some limited work to re-confirm her February experience. No photos or video of the experiment was taken, and the van was not instrumented in any way so as to record any data. According to Ford, Dr. Wood learned nothing new from this work.

**DISCUSSION**

A.   Legal Standard

Federal Rule of Evidence 702 permits experts qualified by "knowledge, experience, skill, expertise, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See Fed. R. Evid. 702, Advisory Committee Notes. Although there is a presumption of admissibility, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993), the trial court is obliged to act as a "gatekeeper" with regard to the admission of expert scientific testimony under Rule 702. Id. at 597.

Daubert requires a two-part analysis. First, the court must determine whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science" – in other words, whether the testimony is reliable and trustworthy. Id. at 590 & n.9, 593. Second, the court must determine whether the testimony is "relevant to the task at hand." Id. at 597.

B.   Plaintiff's Motion

In the present motion, plaintiff argues that Dr. Wood's testimony and testing should be excluded, for two reasons. First, plaintiff asserts that the challenged opinions are "engineering opinions" as opposed to "human factors" opinions. Plaintiff argues that because Dr. Wood is not an engineer, she is not qualified to offer opinions about the need

4

1  for a warning as a matter of engineering design.  In particular, plaintiff contends that based
2  on the court's prior ruling that Mr. Cantor will not be permitted to give "human factors"
3  opinions (i.e., opinions regarding whether Ford's safety warnings were adequate), Dr.
4  Wood should not be permitted to give "engineering opinions" (i.e., opinions regarding the
5  operation of the seat and the van).  Ford, on the other hand, argues that Dr. Wood is not
6  providing engineering opinions, but rather is giving human factors opinions.

7  Plaintiff's second argument is that Dr. Wood's tests/demonstrations do not satisfy
8  the indicia of scientific reliability required under Daubert, because the proposed testimony
9  does not reflect scientific knowledge or the application of a scientific method; and do not
10 satisfy the test for relevancy under Daubert, because the demonstrative evidence has no
11 connection to the facts of the case at hand.  Ford, on the other hand, asserts that the
12 demonstrations were not "testing" and were simply ex ercises designed to illustrate the
13 testimony Dr. Wood had already given in her deposition.

14 The court finds that the motion must be GRANTED on the first ground argued by
15 plaintiff.  Because Ford designated Dr. Wood as a human factors expert to rebut the
16 opinions of Mr. Cantor regarding the adequacy of the warnings, and because the court
17 previously ruled that Mr. Cantor cannot testify regarding the adequacy of the warnings, the
18 issue of the adequacy of the warnings is no longer in the case.  There is, in effect, nothing
19 for Dr. Wood to rebut.

## CONCLUSION

21 In accordance with the foregoing, the court GRANTS plaintiff's motion to exclude the
22 testing and opinions of Ford's human factors expert, Dr. Christine Wood.

**IT IS SO ORDERED.**

Dated:  April 16, 2009

PHYLLIS J. HAMILTON
United States District Judge

5